IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHNSON CONTROLS TECHNOLOGY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 20-521-MN |
| v. | ) ) | |
| BUILDINGIQ, INC., | ) ) | |
| Defendant. | ) | |

# JOHNSON CONTROLS TECHNOLOGY COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS BUILDINGIQ, INC.'S BREACH OF CONTRACT AND BEST MODE COUNTERCLAIMS

*Of Counsel*:

Jeffrey N. Costakos
Kadie M. Jelenchick
Kevin J. Malaney
Jack. T. Carroll
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400

Dated: June 7, 2021

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff Johnson Controls Technology Company*

{01694437;v1 }

# TABLE OF CONTENTS

I. Introduction .................................................................................................................. 1

II. Factual Background ..................................................................................................... 1

    A. Breach of Contract Allegations – Thirteenth Counterclaim .................................. 2

    B. Best Mode Allegations – Second, Fourth, Sixth, Eighth, Tenth, and Twelfth Counterclaims ........................................................................................ 3

III. Argument ..................................................................................................................... 3

    A. Relevant Legal Standard ....................................................................................... 3

    B. BuildingIQ's Breach of Contract Counterclaim Should Be Dismissed for Failure to State a Claim ........................................................................................ 4

        1. BuildingIQ's MNDA-related allegations are defective ............................. 5

            a. BuildingIQ's pleadings relating to the MNDA are deficient .......... 5

            b. The statute of limitations bars BuildingIQ's claims ....................... 7

        2. BuildingIQ fails to plead the existence of any oral contract ....................... 8

        3. BuildingIQ fails to plead sufficient allegations as to the Panoptix Marketplace ................................................................................................ 9

    C. "Best Mode" Is No Longer a Defense After the Enactment of the AIA ............... 11

IV. Conclusion ................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ampro Computs., Inc. v. LXE, Ltd. Liab. Co.*,
   No. 13-1937-LPS, 2015 U.S. Dist. LEXIS 119717 (D. Del. Sep. 9, 2015) ............................... 6

*Betco Corp. v. Peacock*,
   876 F.3d 306 (7th Cir. 2017) ................................................................................................. 10

*Brew City Redevelopment Grp., LLC v. Ferchill Grp.*,
   714 N.W.2d 582 (Wis. Ct. App. 2006) ................................................................................ 4, 5

*CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*,
   497 N.W.2d 115 (Wis. 1993) .................................................................................................. 7

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016) .................................................................................................... 4

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) ............................................................................................ 4, 6, 9

*Foseid v. State Bank of Cross Plains*,
   541 N.W.2d 203 (Wis. Ct. App. 1995) .................................................................................. 10

*Household Utilities, Inc. v. Andrews Co.*,
   236 N.W.2d 663 (Wis. 1976) .................................................................................................. 4

*Metro. Ventures, Ltd. Liab. Co. v. GEA Assocs.*,
   717 N.W.2d 58 (Wis. 2006) .................................................................................................... 8

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*,
   138 F. Supp. 3d 303 (S.D.N.Y. 2014) ................................................................................... 11

*Runzheimer Int'l, Ltd. v. Friedlen*,
   862 N.W.2d 879 891-92 (Wis. 2015) .................................................................................... 10

*Sacred Heart Hosp. v. Marshfield Clinic Health Sys.*,
   923 N.W.2d 174 (Wis. Ct. App. 2018) .................................................................................. 10

*Sands v. Menard*,
   887 N.W.2d 94 (Wis. Ct. App. 2016) ................................................................................. 8, 9

*Shamrock Holdings v. Arenson*,
   456 F. Supp. 2d 599 (D. Del. 2006) ........................................................................................ 4

*Taliaferro v. Darby Twp. Zoning Bd.*,
    458 F.3d 181 (3d Cir. 2006)......................................................................................................6

*Tynan v. JBVBB, LLC*,
    671 N.W.2d 865 (Wis. Ct. App. 2003) ....................................................................................8

*United Video Props. v. Haier Grp. Corp.*,
    Civil Action No. 11-1140 (KAJ), 2014 U.S. Dist. LEXIS 200099 (D. Del. May 16, 2014)...11

*Zuelke v. Gergo*,
    45 N.W.2d 690 (Wis. 1951).....................................................................................................4

**Statutes**

35 U.S.C. § 112.................................................................................................................................3

35 U.S.C. § 282(b)(3)(A)................................................................................................................11

Leahy-Smith America Invents Act .............................................................................................1, 11

Wis. Stat. § 893.43...........................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................................................................................1, 4

I.      INTRODUCTION

Several of Defendant BuildingIQ, Inc.'s ("BuildingIQ") recently introduced Counterclaims, (D.I. 45), should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). More specifically, BuildingIQ's Thirteenth Counterclaim directed to vaguely defined activities relating to a decade old confidentiality agreement fails to state a claim for breach of an oral or written contract. The contract claims must be dismissed for the additional reason that they are well beyond the relevant six-year statute of limitations. BuildingIQ's efforts to challenge the validity of the patents-in-suit via a "best mode" argument are equally defective. BuildingIQ's Second, Fourth, Sixth, Eighth, Tenth, and Twelfth Counterclaims are statutorily barred by the Leahy-Smith America Invents Act and should be dismissed to the extent they are premised on any allegations regarding a failure to disclose the best mode.

II.     FACTUAL BACKGROUND

Plaintiff Johnson Controls Technology Company ("Johnson Controls") filed this action for patent infringement on April 17, 2020, asserting that BuildingIQ infringed U.S. Patent Nos. 8,843,238 ("the '238 patent"), 9,322,566 ("the '566 patent"), 10,254,721 ("the '721 patent"), 10,175,681 ("the '681 patent"), 10,580,097 ("the '097 patent"), and 8,600,556 ("the '556 patent") (collectively, the "patents-in-suit"). (D.I. 1.) Mere hours before the deadline for any motions to amend the pleadings, (D.I. 17, ¶ 3), and nearly a year into this case, BuildingIQ sought to file a First Amended Answer and Counterclaims, which Johnson Controls opposed.

During the May 7, 2021 hearing on BuildingIQ's contested motion for leave to amend to add numerous new affirmative defenses and counterclaims, the Court addressed the deficiencies of BuildingIQ's proposed breach of contract allegations. Notwithstanding their defects,

BuildingIQ was given an opportunity to amend is proposed breach of contract counterclaim. (D.I. 44, 29:25-30:8.)

> **[F]or the breach of contract claim . . . you need to clarify what contract or contracts you are asserting are breached and what provisions and what information … was included in the [patent] applications in violation of the agreement. And it does seem like you should attach that to the pleading.**

(*Id*. (emphasis added).)

### A. Breach of Contract Allegations – Thirteenth Counterclaim

Consistent with the Stipulated Amended Scheduling Order, (D.I. 43), BuildingIQ filed its First Amended Answer and Counterclaims on May 24, 2021. (D.I. 45.) With its Thirteenth Counterclaim, Building IQ now alleges Johnson Controls "violated oral and written agreements and understanding between JCI and BuildingIQ" as well as "implied covenants of good faith and fair dealing," (*id*. at ¶¶ 104-105), when Johnson Controls (1) used unidentified BuildingIQ confidential information in Johnson Controls' provisional patent applications filed on June 22, 2009, August 14, 2009, and February 9, 2010, (*id*. at ¶¶ 109-110), and (2) asserted the patents-in-suit against BuildingIQ in this litigation, (*id*. at ¶¶ 111).

Parsing through BuildingIQ's disjointed allegations, it appears that BuildingIQ contends an oral confidentiality agreement was entered into between unidentified individuals at BuildingIQ and Johnson Controls sometime "between the middle of 2009 and May 20, 2010." (*Id*. at ¶ 108.) BuildingIQ offers nothing more relating to this alleged oral contract. BuildingIQ then alleges that Johnson Controls' confidentiality obligation "was memorialized" in the May 7, 2010 Mutual Nondisclosure Agreement ("MNDA") attached to its pleading. (*Id*. at ¶ 107.)

The MNDA (and the alleged oral agreement that was subsumed therein) is governed under Wisconsin law, (D.I., 45-1, ¶ 8a), and automatically terminated one year from its effective date, or on May 7, 2011, (*id*. at ¶ 4). Under the plain language of the MNDA, there was a five year

confidentiality period – neither party to the MDNA had any obligations of confidentiality after five years from the date of disclosure of any "Confidential Information" unless otherwise agreed to in writing. (*Id.* at ¶ 5.)

The MNDA does not reference or incorporate any oral agreements. Rather, the express language of the MNDA states that it is the "sole and entire agreement between the parties relating to the subject hereof and any representation, promise, or condition not contained herein, or any amendment hereto shall not be binding on either party unless set forth in a subsequent written agreement signed by an authorized representative of the party to be bound thereby." (*Id.* at ¶ 8b.) In its pleading, BuildingIQ alleged no other written agreements between it and Plaintiff Johnson Controls or any other Johnson Controls-related entity. While BuildingIQ makes multiple references to the "Panoptix Marketplace" in its Thirteenth Counterclaim, BuildingIQ failed to attach any relevant agreement relating to the same.

### B.  Best Mode Allegations – Second, Fourth, Sixth, Eighth, Tenth, and Twelfth Counterclaims

BuildingIQ attempts to raise a best mode defense to the validity of the patents-in-suit, which it appears to incorporate by reference into its Declaratory Judgment Counterclaims of Invalidity, premised in part on 35 U.S.C. § 112. (*See* D.I. 45, ¶¶ 82-85.)

## III.  ARGUMENT

### A.  Relevant Legal Standard

The Third Circuit has provided a three-step process for determining the sufficiency of pleadings:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "The standards for determining a motion to dismiss a counter-claim are the same as for determining a motion to dismiss a complaint." *Shamrock Holdings v. Arenson*, 456 F. Supp. 2d 599, 605 (D. Del. 2006).

Here, Fed. R. Civ. P. 12(b)(6) compels dismissal of BuildingIQ's breach of contract and best mode counterclaims. BuildingIQ's allegations are woefully deficient to state any claim for relief. They are "no more than conclusions," which "are not entitled to the assumption of truth." *Connelly*, 809 F.3d at 787; *see also Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).

**B.     BuildingIQ's Breach of Contract Counterclaim Should Be Dismissed for Failure to State a Claim**

BuildingIQ has failed to state any breach of contract claim. Wisconsin law, which governs the alleged contracts at issue, has long recognized that "[t]he essence of a contract is that the minds of the parties thereto must meet on the same thing." *Zuelke v. Gergo*, 45 N.W.2d 690, 692 (Wis. 1951). And "[t]here is no meeting of the minds where the parties do not intend to contract" as is the case where they fail to "agree on the essential terms and conditions of the contract." *Household Utilities, Inc. v. Andrews Co.*, 236 N.W.2d 663, 669 (Wis. 1976).

Under Wisconsin law, a plaintiff must establish three elements for breach of contract claims: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages. *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 714 N.W.2d 582, 588 (Wis. Ct.

App. 2006). Here, even under the most generous reading of BuildingIQ's allegations, BuildingIQ has failed to allege non-conclusory facts sufficient to establish one or more of these three elements for any alleged breach of the MNDA, and even if BuildingIQ is given another opportunity to fix its pleading mistakes, the statute of limitations will bar its claims.  BuildingIQ similarly fails to effectively plead the existence of any oral contract or any credible counterclaims relating to the Panoptix Marketplace.  These allegations should also be dismissed.

### 1.  BuildingIQ's MNDA-related allegations are defective

#### a.  BuildingIQ's pleadings relating to the MNDA are deficient

To start, BuildingIQ fails to plead what "Confidential Information" it shared with Johnson Controls under the terms of the MNDA to trigger any Johnson Controls' obligations relating to the same.  The MNDA defines "Confidential Information" to include

> information including technical (including but not limited to inventions, process improvements, formulae, secret processes and techniques, test and evaluation results and data, computer and data processing programs, software code and documentation[,] intellectual property and know how, specifications and formations) and or business information … that is marked ["Confidential"] by the Disclosing Party to the extend practical.

(D.I. 45-1, 1st WHEREAS, 1a.)  Despite the length of the First Amended Answer and Counterclaims, BuildingIQ provides no indication as to what constitutes the alleged BuildingIQ Confidential Information at issue.  BuildingIQ simply contends that Johnson Controls improperly incorporated certain undefined BuildingIQ information into Johnson Controls' provisional patent applications filed on June 22, 2009, August 14, 2009, and February 9, 2010, which are the priority documents for the '556 patent.  The '556 patent alone claims priority to these three provisional applications, which were filed *before* the MNDA was executed. (D.I. 1-1, '556 patent at cover.) The other five patents-in-suit have no familial relationship to the '556 patent, and the applications that issued into these patents were all filed *after* the MNDA's one year automatic termination.  (*Id.*

{01694437;v1 }  5

at '238 patent, '566 patent, '721 patent, '681 patent, '097 patent.) BuildingIQ fails to identify – let alone detail – how any alleged specific confidential BuildingIQ information relates to any of the issued claims for the '556 patent or the other five patents-in-suit.

Further, BuildingIQ fails to plead any credible basis for its claim that the assertion of the patents-in-suit in this lawsuit beginning in 2020 violates any confidentiality obligation that long since expired. (D.I. 45, ¶ 111.) All of the alleged disclosures of BuildingIQ confidential information purportedly incorporated in the Johnson Controls patent filings "occurred in or about the middle of 2009." (D.I. 45, ¶ 106.) Thus, assuming there was a confidentiality obligation, under the Term of the MNDA, any such obligation ended five years later. As such, any contractual obligation to maintain the confidentiality of any BuildingIQ information ended sometime in 2014, long before Johnson Controls filed this action. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 191 n.6 (3d Cir. 2006) (contract claims from long expired contract appropriate for dismissal). It follows that the filing of this lawsuit cannot form the basis for a breach of contract claim related to the MNDA.

In the event the Court overlooks these critical pleading defects, BuildingIQ also fails to allege how it was damaged by Johnson Controls' complained of conduct. BuildingIQ merely states "[s]uch violations of the oral and written agreements have damaged BuildingIQ." (D.I. 45, ¶ 111.) BuildingIQ fails to even detail any contract-specific damages or correction for the same in its Prayer for Relief. (*Id.* at Prayer for Relief.) BuildingIQ's bald statement regarding its alleged damages is insufficient. It is precisely the type of "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements" that the Court must disregard. *Davis*, 824 F.3d at 341; *see also Ampro Computs., Inc. v. LXE, Ltd. Liab. Co.*, No. 13-1937-LPS, 2015 U.S. Dist. LEXIS 119717, at *17 (D. Del. Sep. 9, 2015) ("Plaintiff has failed to allege the

damage element of its breach of contract claim and has failed to state a claim on which relief may be granted.").

Finally, BuildingIQ fails to plead how the MNDA is connected to the parties in this litigation. (*Compare* D.I. 45-1 *with* D.I. 45.)  The MNDA is an agreement between Johnson Controls, Inc. and BuildingIQ Pty Ltd, which are the not the parties before the Court.  BuildingIQ does not allege how any BuildingIQ Pty Ltd agreement with Johnson Controls, Inc. would give rise to a breach of contract claim by BuildingIQ, Inc. against Plaintiff Johnson Controls Technology Company in this case.  And, it is too late to attempt to fix this error.  The deadline for any motions for joinder of other parties was April 1, 2021.  (D.I. 17, ¶ 3.)

### b. The statute of limitations bars BuildingIQ's claims

Even assuming BuildingIQ adequately alleged the elements of a claim for breach of the 2010 MNDA, that claim is barred by Wisconsin's six-year statute of limitations. Wis. Stat. § 893.43.  More than 90 years of Wisconsin precedent holds that "in an action for breach of contract, the cause of action accrues and the statute of limitations begins to run from the moment the breach occurs. **This is true whether or not the facts of the breach are known by the party having the right to the action**." *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 497 N.W.2d 115, 117 (Wis. 1993) (citations omitted) (emphasis added).

Here, the statute of limitations began to run at the alleged breach – *i.e.*, incorporation of BuildingIQ confidential information into certain Johnson Control patent filings in 2009 and 2010. Thus, any claim based on this purported breach was long ago extinguished.  This is true whether or not BuildingIQ was aware of the alleged breach, as Wisconsin is not a "discovery rule" state for contracts.  *Id*. at 118 ("The Wisconsin legislature has expressly rejected the discovery rule when enacting a contract statute of limitation.").

### 2. BuildingIQ fails to plead the existence of any oral contract

BuildingIQ similarly fails to adequately plead the existence of any oral contract, mandating dismissal of BuildingIQ's Thirteenth Counterclaim relating to the same. Despite making several references to oral agreements, BuildingIQ never pleads the necessary information to establish that any oral contract existed. (*See* D.I. 45, ¶¶ 104-108, 111.) The closest the pleadings come to alleging that an oral contract existed is "[the] oral agreement was the result of explicit statements by BuildingIQ prior to the disclosure of confidential information by BuildingIQ, and said explicit statements made clear the confidentiality of the information to be discussed." (*Id.* at ¶ 106.) However, any unilateral statements made by BuildingIQ alone are insufficient to establish the existence of an oral contract. *See Tynan v. JBVBB, LLC*, 671 N.W.2d 865 (Wis. Ct. App. 2003); *Sands v. Menard*, 887 N.W.2d 94, 108-09 (Wis. Ct. App. 2016).

An oral contract must meet all the requirements of a contract, which BuildingIQ has failed to plead. *Metro. Ventures, Ltd. Liab. Co. v. GEA Assocs.*, 717 N.W.2d 58, 66 (Wis. 2006) ("A contract must be definite and certain as to its basic terms and requirements to be enforceable."). BuildingIQ utterly failed to allege any material terms of the oral contract, who specifically agreed to these terms and when, the duration of the oral agreement, or whether there was any consideration exchanged between the parties. Significantly, BuildingIQ also fails to allege that there was any meeting of the minds on any purported oral agreement. At best, based on BuildingIQ's pleading, some unidentified individuals associated with Johnson Controls had a nebulous obligation to maintain the confidentiality of certain unidentified BuildingIQ information for some undefined period of time. This is hardly sufficient to establish the existence of any oral contract between BuildingIQ and Johnson Controls.

### 3. BuildingIQ fails to plead sufficient allegations as to the Panoptix Marketplace

BuildingIQ has failed to plead sufficient allegations to support any claim directed to the Panoptix Marketplace or any agreement relating to the same. As it relates to the Panoptix Marketplace, as an initial matter, BuildingIQ's pleading ignores the Court's May 7, 2021 directive:

> **[F]or the breach of contract claim . . . you need to clarify what contract or contracts you are asserting are breached and what provisions and what information … was included in the [patent] applications in violation of the agreement. And it does seem like you should attach that to the pleading.**

(D.I. 44, 29:25-30:8 (emphasis added).) Indeed, BuildingIQ did little more than make conclusory statements upon information and belief that sales and customer information obtained by Johnson Controls violated oral and written agreements and understandings and implied covenants of good faith and fair dealing. (D.I. 45, ¶¶ 91, 95, 105.) Allegations that include nothing more than the elements of a claim fails to meet the pleading requirements. *Davis*, 824 F.3d at 341.

Any breach of contract claim regarding the Panoptix Marketplace must be dismissed. BuildingIQ neither attached any agreement relating to the Panoptix Marketplace nor credibly pled sufficient allegations to establish the existence of any relevant agreement. BuildingIQ also did not plead any allegations relating to terms that were purportedly breached by Johnson Controls. BuildingIQ similarly failed to allege any damages relating to the Panoptix Marketplace. Because BuildingIQ failed to identify the existence of a contract between the relevant parties involved in this litigation let alone credible allegations that such an agreement was breached or that BuildingIQ was damaged, this claim should be dismissed. *See Sands*, 887 N.W.2d at 108-09 (failing to identify essential terms of contract lead to proper dismissal of the claim).

Without establishing any agreement, BuildingIQ's counterclaim attempting to implicate the implied covenant of good faith and fair dealing should also be dismissed. Every contract

implies a duty of good faith and fair dealing between the parties to it. *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879 891-92 (Wis. 2015); *see also Sacred Heart Hosp. v. Marshfield Clinic Health Sys.*, 923 N.W.2d 174 (Wis. Ct. App. 2018). Such duties arise because Wisconsin law disfavors following the letter, but not the spirit, of an agreement. *Runzheimer,* 862 N.W.2d at 891-92. The implied covenant of good faith and fair dealing is meant to prevent a party from technically complying with the form of an agreement while "accomplishing exactly what the agreement of the parties sought to prevent." *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 212 (Wis. Ct. App. 1995). Thus, "a party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled." *Id*. "[A] plaintiff must offer some evidence that the party accused of bad faith has actually denied the plaintiff the intended benefits of the contract." *Betco Corp. v. Peacock*, 876 F.3d 306, 310 (7th Cir. 2017).

Here, BuildingIQ has failed to provide any salient facts related to the Panoptix Marketplace that would permit any claim for the breach of the implied covenant of good faith and fair dealing to survive. BuildingIQ does not allege any terms of any agreement relating to the Panoptix Marketplace, any negotiations relating to the same, or any intended benefits that it was purportedly denied. (D.I. 45, ¶¶ 91, 95, 105.) These failures doom BuildingIQ's claim.

Moreover, BuildingIQ's own pleading undermines its claim. BuildingIQ specifically alleges that the Panoptix Marketplace was a platform where BuildingIQ was granted access to Johnson Controls customers, not the other way around. (*Id.* at ¶ 90 ("In accordance with the operation of the Panoptix Marketplace, **_owners of devices manufactured by JCI_** would get on the website of the Panoptix Marketplace, and then select, purchase and pay for software products, such as the software products furnished by Counterclaim-Plaintiff BuildingIQ")(emphasis added).) Thus, according to BuildingIQ's own allegations, all of the customers in Panoptix were **already**

**existing Johnson Controls customers**. This obliterates any alleged violation of the implied covenant of good faith and fair dealing related to Johnson Controls obtaining "customer names, sales data and other information" from BuildingIQ through Panoptix because they were first and foremost Johnson Controls customers. (*Id*. at ¶ 91.)

### C. "Best Mode" Is No Longer a Defense After the Enactment of the AIA

The Leahy-Smith America Invents Act eliminated the best mode defense for any action filed on or after September 16, 2011. 35 U.S.C. § 282(b)(3)(A). "[F]ailure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable." *Id.*; *see also United Video Props. v. Haier Grp. Corp.*, Civil Action No. 11-1140 (KAJ), 2014 U.S. Dist. LEXIS 200099, at *109 (D. Del. May 16, 2014); *Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F. Supp. 3d 303, 318 (S.D.N.Y. 2014).

Here, as Johnson Controls filed the present action against BuildingIQ on April 17, 2020, there is no question that any BuildingIQ Counterclaim directed to any alleged failure to disclose the best mode fails to state a claim upon which relief can be granted. The Court should dismiss and limit the Second, Fourth, Sixth, Eighth, Tenth, and Twelfth Counterclaims accordingly.

### IV. CONCLUSION

For the foregoing reasons, Johnson Controls respectfully requests that the Court grant its Motion to Dismiss BuildingIQ's Breach of Contract and Best Mode Counterclaims.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | /s/ *Andrew C. Mayo* |
| *Of Counsel*: | Steven J. Balick (#2114)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150 |
| Jeffrey N. Costakos<br>Kadie M. Jelenchick<br>Kevin J. Malaney<br>Jack. T. Carroll<br>FOLEY & LARDNER LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202-5306<br>(414) 271-2400 | Wilmington, DE 19899<br>(302) 654-1888<br>sbalick@ashbygeddes.com<br>amayo@ashbygeddes.com<br><br>*Attorneys for Plaintiff Johnson Controls Technology Company* |

Dated: June 7, 2021